UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIM. NO. 02-60049-01** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **JAMES CLARK** | * | **MAGISTRATE JUDGE HILL** |

REPORT AND RECOMMENDATION

The defendant, James Clark, has filed a Motion to Dismiss the pending indictment, claiming a violation of 18 U.S.C. § 3161(c)(1), the Speedy Trial Act (STA). [rec. doc. 172]. The government has filed an opposition to the motion [rec. doc. 176], to which the defendant has filed a reply. [rec. doc. 179]. For the reasons set out herein, the undersigned recommends that the motion be **denied**.

### FACTS AND PROCEDURAL HISTORY

The defendant, James Clark was indicted with his codefendant, Brian Keith Clark (Brian Clark) in one count of a three (3) count indictment charging distribution of crack cocaine. [rec. doc. 1]. A superceding indictment was returned by the grand jury on September 15, 2004, adding two (2) additional counts against Brian Clark. No additional charges were added against James Clark. [rec. doc. 69].

James Clark appeared and entered a plea of not guilty on December 12, 2002. After a detention hearing December 17, 2002, James Clark was released on conditions; he remains free on those conditions of release. [rec. doc. 35]. Trial was initially set for

February 18, 2003. [rec. doc. 24]. Counsel for James Clark then moved to continue the trial date. The motion specifically asked that the court grant "an ends of justice" continuance so as to allow the defendant a reasonable time in which to prepare for trial. [rec. doc. 40]. The court granted the motion, finding that the ends of justice required the continuance. [rec. doc. 41].

On February 3, 2003, James Clark waived his rights under the STA. [rec. doc. 44]. On March 5, 2003, counsel for Brian Clark moved to continue the trial on the grounds that Brian Clark was then currently hospitalized with "an infectious disease which is highly exposed [sic] and contagious." [rec. doc. 50]. James Clark did not oppose the continuance, which was granted; trial re-set for June 2, 2003. The Order granting the continuance again made an "ends of justice" finding. [rec. doc. 52].

On May 15, 2003, both defendants moved the court to continue the trial without date. This motion asserted that the "ends of justice" required the continuance because Brian Clark continued to be "very ill" with a contagious disease which precluded his ability to assist counsel in his defense. [rec. doc. 55]. Finding that the ends of justice, as set out in the motion, required the continuance, the court continued the trial without date. [rec. doc. 56].

The court monitored the condition of the defendant Brian Clark, and on March 8, 2004, counsel for Brian Clark notified the court that her client was suffering from "recurrent severe hydrodinetis supportive profunda" a "chronic infection ... in his blood

stream" which caused risk to himself and "others whom he may come in contact with". [rec. doc. 60].

The superceding indictment was returned on September 19, 2004. [rec. doc. 69]. Trial was set for December 6, 2004. [rec. doc. 79]. On October 20, 2004, Brian Clark filed a motion to determine whether he was physically able to stand trial. [rec. doc. 89]. The defendant Brian Clark again moved for a continuance because of the difficulty in scheduling the hearing on the motion to determine the physical ability of the defendant, Brian Clark, to stand trial. [rec. doc. 93]; the motion was granted and trial was reset for January 21, 2005. [rec. doc. 94].

Because of the difficulty in securing the attendance of the treating physician of Brian Clark, the hearing on the motion to determine his physical ability to stand trial was not held until January 6, 2005. After taking evidence, the undersigned held that the defendant was physically able to stand trial, but only under strict supervision and only with extraordinary precautions.

Specifically, the undersigned found that the defendant suffered from one of the worst cases of "hydradenitis suppurativa profunda" that his treating physician had ever seen. This condition was caused by a series of staph infections over the years, treated with series of antibiotic therapy, which resulted in a resistant strain of bacteria. This resistant bacteria infected Brian Clark's sweat glands causing the infected sweat glands to fill with pus, which then drained through resultant lesions in the skin.

I also found that Brian Clark was essentially "colonized" with this resistant bacteria which is easily passed from one person to another. Anyone who came into physical contact with Brian Clark could easily become a carrier of the organism which is usually harbored in the perineal and perianal areas and in the nostrils, making it very hard to eradicate.

Specifically, the undersigned found as follows:

> "This case is unusual in that in my judgment the trial poses a greater health risk to court personnel, the lawyers and potentially even the jurors than it does to the defendant. That risk would be made greater in the event that it became necessary to physically restrain the defendant during trial. To date, the defendant has not shown any particular tendency towards violence, but such a possibility cannot be completely discounted in any case, and cannot be discounted here.
> Because of the defendant's medical condition, it is going to be necessary, at the very least, to require the defendant to wear clothing that completely covers his body, preferably in multiple layers. Additionally, the defendant should be gloved with special surgical gloves that do not cause his hands to sweat. The courtroom furniture which the defendant contacts will need to be disinfected daily, as will any restroom facilities which he uses. All participants will have to be reminded to carefully wash their skin at least daily, and to wash their hands and other exposed areas of skin more often.
> Court security personnel will need to wear gloves in the event that it becomes necessary to physically handle or restrain the defendant."

[rec. doc. 109, pp. 8-9].

On January 25, 2005, the court held a status conference with counsel to discuss how to proceed. After considering the medical condition of Brian Clark, the court continued the trial without date and instructed the government to propose a method of trying the defendant without endangering court personnel, counsel and the jurors. Additionally, the court discussed a possible severance of James Clark for a separate trial.

Both counsel for the government and counsel for James Clark told the court that they would **not** seek a severance. [rec. doc. 120, p.2].

Thereafter, a plea agreement was informally reached between the government and Brian Clark, and the court was so notified. Apparently believing that the plea would shortly occur, on May 12, 2005, the court set trial for James Clark to begin on August 15, 2005. No severance motion was filed; no severance was ordered. [rec. doc. 132]. On July 25, 2005, the court granted the motions of both defendants to continue the pending proceedings because of a flare-up in the illness of Brian Clark and because of head injuries sustained by Brian Clark in an automobile accident. [rec. doc. 142]. Because of the head injury to Brian Clark, the court ordered counsel to depose Brian Clark's treating physicians to determine his competence to assist counsel and stand trial. [rec. doc. 144].

On May 12, 2006, the court had a status conference to discuss the competency of Brian Clark to stand trial. Counsel for Brian Clark declined to ask for a competency hearing and indicated that her client still intended to enter a guilty plea. Counsel for James Clark informed the court that he intended to "explore the possibility" of filing a motion to dismiss on STA grounds. The court instructed counsel to file any such motion within thirty days. [rec. doc. 154]. That deadline was later extended to June 30, 2006 on motion of James Clark. [rec. doc. 157].

On September 11, 2006, Brian Clark entered a plea of guilty to Count 4 of the indictment. On October 26, 2006, the government moved to set the trial of James Clark.

[rec. doc. 163]. On November 14, 2006, at the status conference to set the trial date, counsel for James Clark said that he was still considering filing a motion to dismiss for violation of the STA. The court instructed him to do so by December 15, 2006, and set trial for February 5, 2007. [rec. doc. 166]. This motion was filed on December 22, 2006. [rec. doc. 172]. The court again continued the trial pending the outcome of this motion. [rec. doc. 175].

## LAW AND ANALYSIS

This motion to dismiss is brought solely under the STA; no Sixth Amendment speedy trial claim under *Barker v. Wingo*, 92 S.Ct. 2182 (1972) is asserted.[1]

Initially, it is clear that counsel for James Clark recognizes that the several continuances in this matter caused by the medical condition of his codefendant, Brian Clark, are properly excludable from calculations under the STA, because each was made after an "ends of justice analysis".[2] [rec. doc. 172, p. 2]. In fact, counsel for James Clark does not argue that time began to run under the STA until April 6, 2006. [rec. doc. 172, p.7]. Counsel argues that the STA time limits began to run on that day because, he argues,

---

[1] No Sixth Amendment claim is available to James Clark. In order to prevail on a Sixth Amendment speedy trial claim, a defendant must, in due course, assert his right to a speedy trial. *Doggett v. United States*, 112 S.Ct. 2686, 2690 (1992). No such assertion by Clark was made in this case and, in fact, counsel for Clark specifically declined to accept a severance, which would have resulted in a separate, and a more "speedy", trial when a severance was offered by the court. [rec. doc. 120, p.2].

[2] Judge Doherty continued the trial of this case without date because of Brian Clark's disease. Generally, open-ended continuances are discouraged, but under the extraordinary circumstances of this case, such a continuance was clearly proper. *See United States v. Jones*, 56 F.3d 581, 585-86 (5th Cir. 1995).

the government hand delivered copies of the deposition transcripts of the treating physicians of his codefendant to the court on that day. James Clark argues that this delivery constituted the court taking the "motion" of Brian Clark's counsel "under advisement." [rec. doc. 172, pp. 6-7]. Counsel then argues that the decision of the court on May 12, 2006, that Brian Clark was competent to stand trial, came after the passage of an additional thirty-five days which, he asserts, are unexcludable under the STA.

The defendant James Clark then goes on to argue that the forty-five days from the date that his codefendant, Brian Clark, entered his guilty plea on September 11, 2006 until October 2006, when the government moved to set his trial is also not excludable under the STA. [rec. doc. 172, pp. 9-10]. Adding these two periods together yields a "non-excludable" eighty days. Since this eighty days exceeds the seventy day requirement of the STA, James Clark's counsel argues, dismissal is required. James Clark then goes on to argue that the dismissal should be with prejudice.

Counsel's argument fails on several counts. First, there was never a "motion" filed by Brian Clark's counsel to determine his competency. It is clear that counsel and the court were concerned about possible brain damage to Brian Clark and whether or not he was competent to assist counsel and stand trial. The court ordered that the treating physicians be deposed to determine his mental capacity. At the status conference on May 12, counsel for Brian Clark informed the court that she did not believe that a competency hearing was necessary. Since no motion was ever filed, it follows that no motion was ever

"under advisement" as James Clark argues.

Next, it is quite clear from the record herein that from the beginning of this case the various continuances were caused by the physical condition and illness of Brian Clark. The entire period from March 10, 2003 until Brian Clark's plea of guilty on September 11, 2006 is properly excludable under the STA for at least two reasons: First, this entire period is excludable based on the "ends of justice" continuances granted on March 10, 2003, and thereafter, by Judge Doherty. Brian Clark had a highly contagious, incurable disease which prevented his trial from commencing. Every continuance after March 10, 2003 was caused by Brian Clark's disease or his subsequent closed head injury. As is admitted by counsel for James Clark, all of this time is excludable both to Brian Clark and to James Clark because the two are codefendants.

Secondly, the entire time between March 10, 2003 and September 11, 2006 is excludable pursuant to 18 U.S.C. § 3161(h)(4). That section provides that any period of delay resulting from the fact the defendant is mentally incompetent or physically unable to stand trial is excludable. Even a cursory review of this record clearly shows that the entire period from March 10, 2003 to September 11, 2006 was excludable based on this provision.[3]

---

[3] Furthermore, the period from James Clark's initial appearance on December 12, 2003 to December 17, 2003, and the period from December 26, 2003 to January 3, 2004 are excludable because motions were pending during those periods. Beginning on January 24, 2003, "ends of justice" continuances were granted on motion of both defendants. The case was then continued several times based on the condition of Brian Clark, until the trial was reset on November 14, 2006.

Accordingly, the Motion to Dismiss for violation of the Speedy Trial Act should be denied. However, for completeness, the undersigned will briefly address the factors to be considered by the court in determining whether a dismissal for violation of the STA, which did not occur here, should be with or without prejudice.

In *United States v. Alford*, 142 F.3d 825 (5th Cir.1998), the court said that in deciding whether or not a dismissal for violation of the STA should be with or without prejudice, the court should consider the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the STA and on the administration of justice. At 830.

Consideration of each of these factors would favor dismissal without prejudice in this case. The offense with which the defendant, James Clark, is charged is a serious violation of the drug laws, distribution of crack cocaine. The seriousness of the offense would clearly favor dismissal without prejudice. The facts and circumstances leading to dismissal would also favor dismissal without prejudice. As set out above, the court was faced with a clearly unique set of circumstances which was dealt with as expeditiously as possible under the circumstances. Furthermore, James Clark was offered a severance and thus a "speedier" trial which he turned down. Having declined a speedy trial, it is disingenuous, at best, to now complain that any violation of the STA was so severe so as to require dismissal with prejudice. Finally, the impact of a reprosecution on the

administration of the STA and the administration of justice would be nil. This is not a case that lingered because of any action by the government. Rather, using the calculations of counsel for James Clark (which are incorrect), the time limit for prosecution under the STA was exceeded by only ten days over a nearly four year period. Such a violation, even if it occurred, is clearly *de minimis*. Each of these factors would favor a dismissal without prejudice.[4]

## CONCLUSION

For the above reasons, the undersigned recommends that the Motion to Dismiss filed by the defendant James Clark, be **denied.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by**

---

[4] One fact alone would predominate in any such analysis, and that is the fact that counsel for James Clark declined a severance, and thus a "speedy trial", when it was offered to him. This choice might not preclude a violation of the STA, and thus a dismissal of the prosecution, because of the decision by the court in *Zedner v. United States*, 126 S.Ct. 1976 (2006), but this fact would clearly always favor dismissal without prejudice rather than the more extreme remedy.

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996)**.

Lafayette, Louisiana, June 15, 2007.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE