RECEIVED

APR 1 4 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION NO: 6:02-60049-01 |
|---|---|
| VERSUS | JUDGE DOHERTY |
| JAMES CLARK | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Currently pending before the Court is a Motion in Limine filed by defendant, James Clark, wherein he moves the Court for an order prohibiting the government from introducing evidence at trial regarding defendant's prior conviction for distribution of cocaine, in a matter entitled State of Louisiana v. James Clark, Parish of St. Landry, No. 91-K-4496-D. [Rec. Doc. 194] The government opposes the motion.¹ [Rec. Docs. 196 and 197]

Defendant argues any evidence regarding defendant's prior conviction should be excluded due to its "temporal remoteness" (defendant's previous conviction occurred in 1992), unfair prejudice, and because the government has identified no purpose for admission of the evidence under Rule 404(b).² Contrarily, the government argues the evidence is admissible "for the purpose of

---

¹ Defendant is charged with one count of "Distribution of Cocaine Base (Crack)." [Rec. Doc. 69]

² Defense counsel additionally argues the evidence should not be admissible, because FED. R. EVID. 609(b) provides a presumption that convictions more than ten years old are inadmissible, and the extrinsic conviction occurred sixteen years ago. As noted by the government, defendant pled guilty on July 7, 1992, and was indicted in this matter on November 15, 2002 for conduct allegedly occurring in June of 2002. Thus, it appears there was an approximate ten year, rather than sixteen year, gap between convictions. Moreover, as the government correctly argues, Rule 609, which addresses impeachment of a witness, is not applicable to the current motion. In support, the government cites U.S. v. Rubio-Gonzales, 674 F.2d 1066, 1075 (5th Cir. 1982) ("evidence admitted under Rule 404(b) is not controlled by the ten-year limit specified in Rule 609(b)... .") However, the Court notes the following language, also from Rubio-Gonzales: "Of course, if the prior crimes or acts admitted under Rule 404(b) are too remote in time, this may substantially weaken their probative value and hence, weigh in favor of their exclusion under Rule 403." Id.

proving the allegations that this defendant possessed and distributed the controlled substance in this case, and for the purpose of using the prior conviction as evidence of knowledge, intent, preparation, plan and pattern." [Rec. Doc. 197, p. 2]

In the original opposition [Rec. Doc. 196], counsel for the government argued evidence of a prior conviction should be admitted "for the purpose of proving the allegations that this defendant possessed and distributed the controlled substance in this case were not made by mistake, and that the prior conviction serves as evidence of knowledge, intent, preparation, plan and pattern." [Rec. Doc. 196, p. 2] Recently, the government filed a document entitled, "Explanation of Corrected Version of Government's Opposition to Defendant's Motion in Limine." [Rec. Doc.197] In that document, counsel advised the Court "absence of mistake" was not a basis to admit 404(b) evidence under the facts involved herein, and it resubmitted its opposition, removing all allegations of "absence of mistake" therefrom.

In the first opposition, counsel argued (rather than just listed) "absence of mistake" and "intent." In the amended opposition, counsel only argued, "intent," and merely listed the other bases (i.e., knowledge, identity, etc.) for allowing the prior conviction into evidence.

### Applicable Law

Federal Rule of Evidence 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The seminal Fifth Circuit case addressing FED. R. EVID. 404(b) is United States v. Beechum, 582 F.2d 898 (5th Cir. 1978)(*en banc*). Beechum began with the proclamation that Rule 404(b):

> [F]ollows the venerable [common law] principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character. Even though such evidence is relevant, because a man of bad character is more likely to commit a crime than one not, the principle prohibits such evidence because it is inherently prejudicial.

Id. at 910. Next, the Court set forth the analysis a trial court must apply when the government anticipates submitting evidence at trial of other crimes, wrongs, or acts committed by the accused. The Court stated the test as follows:

> What the rule calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403. The test for relevancy under the first step is identical to the one we have already encountered. The standards are established by rule 401, which deems evidence relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the offense charged. In this regard, however, similarity means more than that the extrinsic and charged offense have a common characteristic. For the purposes of determining relevancy, "a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand." Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv.L.Rev. 954, 955 (1933). Therefore, similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed.
>
> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

Id. at 911-12 (footnotes and citations omitted).

As to the second step of the 404(b) analysis - whether the probative value of the extrinsic evidence substantially outweighs its undue prejudice - the Court stated the following:

> Probity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice. Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily. If the defendant's intent is not contested, then the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice; therefore, in this circumstance the evidence is uniformly excluded. In measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic and charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence. Of course, equivalence of the elements of the charged and extrinsic offenses is not required. But the probative value of the extrinsic offense correlates positively with its likeness to the offense charged. Whether the extrinsic offense is sufficiently similar in its physical elements so that its probative value is not substantially outweighed by its undue prejudice is a matter within the sound discretion of the trial judge. The judge should also consider how much time separates the extrinsic and charged offenses: temporal remoteness depreciates the probity of the extrinsic offense.

Id. at 914-15 (citations omitted.)[3]

---

[3] As to procedural issues with regard to 404(b), the Court noted:

> If at the commencement of trial it is not certain that the defendant will contest the issue of intent, the judge is in a poor position to weigh the probative value against the prejudice of the evidence because he cannot foresee the nature or extent of either the Government's case or the defendant's response. . . . [In Beechum,] it was clear before the case went to trial that the crucial issue would be defendant's intent. In effect all the other elements of the crime for which [defendant] was indicted were conceded. Where it is evident that intent will be an issue at trial, we have held the admission of the extrinsic offense as part of the Government's case in chief not to be grounds for reversal. In any event, [defendant] waived any objection he might have had to the Government's order of proof when he took the stand and professed the innocence of his intent.

Id. at 915-16 (citations omitted).

## Analysis

First, the Court notes that defendant is charged with "Distribution of Cocaine Base (Crack)," and not "Possession with Intent to Distribute." [Rec. Doc. 69] Therefore, the prior conviction is not of the same offense, nor will the government bear the burden of proving "possession" or "intent to distribute" with the immediate charge, rather the government must prove that he *in fact distributed* a controlled substance. *See* Fifth Circuit Pattern Jury Instructions, Criminal 2.87 (2001). As previously noted, a charge of distribution of a controlled substance requires the government prove, beyond a reasonable doubt, "that the defendant (1) knowingly (2) distributed (3) the controlled substance." Sotelo, *supra.* Thus, the relevant elements of the instant offense are knowledge, distribution and the substances being controlled. Thus, the inquiry becomes to which, if any of these essential elements would the prior 16 year old conviction be relevant and for what purpose.

Defendant argues the materials produced in discovery thus far indicate the government will attempt to prove defendant sold 80.9 grams of cocaine base to a cooperating source, while defendant was allegedly made the subject of law enforcement surveillance. [Rec. Doc. 194-2, p. 3] Defendant believes the government will argue defendant was followed from a barber shop to the home of his brother, Brian Clark.[4] According to defendant, the government will argue the sale of cocaine base occurred at Brian Clark's residence. Also according to defendant, "a recording was made and the Government believes that the voice of James Clark can be heard on the tape recording." [Id.] Defendant concludes:

> Either that happened and James Clark made a sale of drugs or it did not happen. The defendant James Clark asserts that no drug transaction ever took place

---

[4] Brian Clark was a co-defendant in this case. He entered a plea of guilty on September 11, 2006.

-5-

between him and any of the persons listed above. Query: What does knowledge, intent, or system have to do with the Government proof in this case? Answer: Nothing at all.

Either the Government can prove its case or it cannot. The Government cannot and should not be given the unfair advantage of proving a prior St. Landry Parish conviction, when no issues call for its admission. Even if some ingenious argument can be made by the Government to claim some tenuous connection, the prejudicial effect of the introduction of this conviction would clearly outweigh its probative value.

[Id. at 4]

The government responds:

Where knowledge and intent are elements of the charged offense, evidence of extrinsic acts is especially relevant. . . .The Fifth Circuit has held that where intent is an element of the offense, the entry of a not guilty plea puts intent at issue, and thus, justifies the admission of evidence of extrinsic facts.

Additionally, the Fifth Circuit noted that "exclusion of extrinsic evidence based on its prejudicial effect should only occur sparingly." . . .

When dealing specifically with prior drug convictions, the Fifth Circuit previously held [sic][5] [e]vidence that [co-defendant] was previously convicted of a cocaine delivery offense ... makes it more probable that he had the requisite "state of mind" or "intent" to participate in the present cocaine-related offenses."

[Rec. Doc. 197 at 4 (quoting United States v. Leahy, 82 F.3d 624, 637 (5th Cir. 1996) and Beechum at 831, respectively)]

However, all cases cited by the government in support of the argument above (as well as all cases reviewed by the Court on this issue and the line of cases on the issue) involve charges of "conspiracy." When one traces this line of cases back to its origin, it appears the rule arose out of the unique nature of conspiracy charges, and the difficulty of proving "intent," as required for a

---

[5] Although not properly indicated, the quoted portion of Beechum actually begins as included within this ruling and not as quoted by the government in its brief.

charge of conspiracy. *See* U.S. v. Roberts, 619 F.2d 379, 382-3 (5th Cir. 1980).[6] [Rec. Doc. 69] A charge of "conspiracy" requires the government prove, in part, "that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose." *See* Fifth Circuit Pattern Jury Instructions, Criminal 2.89 (2001). However, in this matter defendant was not charged with

---

[6] The Roberts court stated as follows:

> Charges of conspiracy involve considerations not present in other criminal prosecutions. "(T)he offense of conspiracy requires an element of intent or knowledge which is often difficult to prove." Because the prosecution must prove that the defendant knowingly joined a plan to commit a crime, evidence that establishes a defendant's participation in a criminal act, or evidence establishing his association with co-conspirators, may be insufficient to support the inference that the defendant voluntarily joined a conspiracy to commit a crime. Intent is particularly difficult to prove when a defendant is a passive or minor actor in a criminal drama. If the evidence linking a defendant to a conspiracy is subject to an innocent interpretation, the government may be forced to present some independent evidence of intent to withstand a motion for directed verdict. Moreover, if the government does not present intent evidence in its case in chief the defendant may simply rest and argue lack of intent to the jury without giving the government the opportunity to present such evidence in rebuttal.
>
> Unequivocal evidence that a defendant committed a substantive offense may justify the inference that he intended to do so, but it does not plainly support the conclusion that he agreed and planned with others to commit the crime. Evidence of a defendant's association and dealings with a group of conspirators, even when he knows they intend to commit a crime, does not alone show that he himself had the requisite intent to join the conspiracy. *In every conspiracy case, therefore, a not guilty plea renders the defendant's intent a material issue* and imposes a difficult burden on the government. Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he "affirmatively take(s) the issue of intent out of the case."[FN2]
>
>> FN2. If, for example, the defendant intends to take the stand and deny any participation in the acts evidencing a conspiracy, he may wish to stipulate that those acts prove intent if his participation is established to the satisfaction of the jury. Similarly, a defendant who intends to assert a defense based upon mistaken identity may make an appropriate stipulation to avoid the introduction of extrinsic offense evidence.

Id. at 382-83 (emphasis added) (citations omitted) (quoting United States v. McMahon, 592 F.2d 871, 875 (5th Cir. 1979)).

"conspiracy," but rather with "Distribution of Cocaine Base (Crack)." A charge of "distribution" merely requires the government prove "that the defendant (1) knowingly (2) distributed (3) the controlled substance." United States v. Sotelo, 97 F.3d 782, 789 (5th Cir.1996). Thus, the reasoning of the cases cited by the government in support of its argument does not seem applicable here, as on its face, a charge of actual distribution does not involve the unique challenges for the government as to intent, as does a charge of conspiracy. Either defendant distributed the substance – i.e., he was the person recorded and involved in the sale – or he was not.

As to the first portion of the Beechum test (relevancy with regard to an issue other than defendant's character), the government argues:

> [It] will not use the prior convictions for purposes of attacking the defendant's character, and specifically requests admission only for use of proving intent, **identity**, knowledge, plan and pattern to distribute the drugs in the Opelousas area as alleged in the present case. The two crimes, occurring less than ten years apart, deal with the distribution of the same controlled substance. . . . Since defense counsel indicated his defense will be that Brian Clark, the brother of the defendant, distributed the drugs and was recorded by DEA agents, then the precise logic of the aforementioned Rule 404(b) and jurisprudence becomes applicable.
>
> . . . As *Beechum* points out, if it is shown to a jury that James Clark had intent in the extrinsic offense, it is likely they would believe he could possess knowledge and intent in the present offense, thereby contradicting any mistaken identity defense.

[Rec. Doc. 197, pp. 5-6(emphasis added)(footnote omitted)]

The Court notes, despite the government's assertion in its "corrected" opposition that it *only* removed references to "absence of mistake" from its original opposition (and specifically citing the Court to the pages where those references were removed) [Rec. Doc. 197, n.1], its request for admission of this 404(b) evidence for the purpose of proving "identity" was not contained in the original opposition. [See Rec. Doc. 196, p.5]

Additionally, from what is before the Court, it does not appear the "identity" exception contained in 404(b) would be applicable here. In U.S. v. Silva, 580 F.2d 144 (5th Cir. 1978), defendant was charged with distribution of heroin and distribution of cocaine. The government attempted to offer 404(b) evidence (specifically, testimony as to negotiations for the sale of heroin, subsequent to the transaction for which defendant was charged) for purposes of showing "identity." The Court held:

> The identity exception has a much more limited scope; it is used either in conjunction with some other basis for admissibility or synonymously with Modus operandi. A prior or subsequent crime or other incident is not admissible for this purpose merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused. No such handiwork was here shown.

Id. at 148; *see also* U.S. v. Evans, 848 F.2d 1352, 1360 (5th Cir. 1988)(recognizing there are alternative bases for admission of 404(b) evidence, pursuant to its "identity" exception, in addition to the "handiwork or signature exception" or the "modus operandi" exception).

Finally, the Court notes the government makes *specific* arguments that the extrinsic offense should be admitted, *only* as to "intent." "[I]dentity, knowledge, plan and pattern to distribute the drugs in the Opelousas area" are merely listed, without any argument in support. Consequently, the Court finds the government has failed to carry its burden of proof that defendant's previous conviction should be admitted for purposes of proving "identity, knowledge, plan and pattern to distribute the drugs in the Opelousas area."

As to the second portion of the Beechum test (probative value not outweighed by undue prejudice), the government argues:

> [T]he Government maintains use of the prior conviction will be for the *limited purpose of proving two elements of the offense,* namely that James Clark *possessed with the intent to distribute*. Accordingly, the admission of the conviction would not

> cause substantial undue prejudice on the defendant. As mentioned above, the probative value of the prior conviction in this case is substantial due to the necessity and burden of proving the possession and intent elements of the crime, especially against a defense of mistaken identity.
>
> . . .
>
> The need for admission of the prior conviction is key to the Government's case, and case law allows admission of such a conviction. The need is great because no other evidence, stipulation or inference establishes whether James Clark could conceivably, in addition to his brother, possess the requisite intent and knowledge to distribute the drugs under a defense of mistaken identity. Therefore, use of this extrinsic evidence, the prior conviction, coupled with the direct evidence of the recording and surveillance, create a greater probative value weight in this case with respect to intent and the anticipated defense, than the value of any undue prejudice. With the possibility of undue prejudice diluted with proper jury instructions, it is clear the plain language of 404(b) and related jurisprudence requires admission of the prior extrinsic offense in order for the Government to meet its heavy burden.

[Rec. Doc. 197, pp. 6-7 (emphasis added)] Again, all cases cited by the government in support of its argument involve charges of "conspiracy."

Thus, if indeed the only evidence the government submits to prove the defendant *knowingly distributed* a controlled substance is audio recordings, which the government contends contains James Clark's voice, and which the defendant argues does not contain his voice, it would seem a prior, 16 year old conviction for distribution of cocaine would be relevant only to an argument the defendant possesses bad character, i.e., because the defendant was involved with drugs 16 years ago, one should assume it was he who was involved this time as well. Such a use is clearly outside the appropriate use of such evidence. Thus, based upon what has been presented to date, the Court likely will not allow evidence of the prior conviction to be submitted at the trial of this matter.

Further, from what has been presented to the Court thus far and the Court's finding, there is no legitimate and allowable basis for the use, on a 104/403 analysis the prejudice which would flow

would far outweigh any probative value. There is no other evidence of any other drug activity by defendant at present, or during the ten year span between his earlier guilty plea and this indictment, and the factual issue for the trier of fact is a simple one; was it defendant who was captured on tape engaged in a drug buy with a third party or was it not? Defendant says it was not; the government says it was – the jury must decide. Whether defendant possessed the same state of mind at the time of the alleged instant offense as defendant possessed 10 years prior, is questionable at best. If the government's entire case is premised upon whether or not defendant's voice is that which is contained on the voice recording, that is an issue the jury must decide. Again, under such circumstances, the prior conviction, it would seem, would be used solely for the purpose of showing defendant is a person of "bad character," who acted in conformity with a similar, but distinct, crime for which he was previously convicted. Such evidence is prohibited under Rule 404(b).

Due to the forgoing, the Motion in Limine is **GRANTED** based on the arguments presented to date. If at trial, the government should wish to argue an alternative basis or present additional support for the admission of defendant's prior conviction, it must make its argument outside of the presence of the jury.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 14 day of April, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-11-